36 A.3d 513

**Bryan Lamont POOLE**

v.

**STATE of Maryland.**

**No. 2098, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Feb. 1, 2012.

**2**

---

Jeffrey M. Ross (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Edward J. Kelley (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: DEBORAH S. EYLER, KEHOE, RAYMOND G. THIEME, JR. (Retired, Specially Assigned).

KEHOE, J.

After a jury trial in the Circuit Court for Montgomery County, Bryan Lamont Poole was convicted of first degree murder and use of a handgun in a crime of violence. On March 25, 1996, Poole was sentenced to life imprisonment for the murder conviction and twenty years for the handgun conviction (to be served concurrently). His conviction and sentence were affirmed by a panel of this Court on January 24, 1997. *Poole v. State*, Slip Op., No. 500, Sept. Term, 1996 (filed January 24, 1997), 113 Md.App. 737 (1997).

On March 14, 2006, Poole filed a *pro se* petition for postconviction relief. On January 24, 2008, Poole's assigned public defender filed a "Supplemental Petition for Post Conviction Relief" raising additional grounds for relief.[1] At the

---

1. The court paper should have been titled "Amended Petition for Postconviction Relief" to be consistent with Maryland Rule 4–402(c), which provides that postconviction relief petitions may be amended. The rule does not use the term "supplement." We will disregard nomenclature and look to the substance of the filing. *See In Re Deontay J.*, 408 Md. 152, 160, 968 A.2d 1067 (2009) (It is a "well established principle that 'the substance rather than the form of the pleading is the controlling consideration.'" (quoting *Lapp v. Stanton*, 116 Md. 197, 199, 81 A. 675 (1911)); *accord Corapcioglu v. Roosevelt*, 170 Md.App. 572, 590–91, 907 A.2d 885 (2006)).

 To be consistent with the usage of the parties and the postconviction court, we will sometimes refer to the court paper as a supplemental petition. However, as we will explain, the supplemental petition was

postconviction hearing on October 1, 2008, the court dismissed Poole's supplemental petition as untimely filed. Thereafter, the court issued a memorandum opinion and order denying Poole's original petition for postconviction relief.

Poole filed an application for leave to appeal. We granted his application on March 30, 2011. Poole presents one question to this Court, which we have altered slightly:

> Did the postconviction court err in dismissing Poole's supplemental petition for postconviction relief because it was not filed within ten years of the date of his sentencing as required by MD. CODE ANN., CRIM. PROC. § 7–103(b)(1)?

We conclude that the postconviction court erred by dismissing Poole's amended petition for failure to show "extraordinary cause." Amendments to postconviction relief petitions are governed by Maryland Rule 4–402(c), which provides that an "[a]mendment of the petition shall be freely allowed in order to do substantial justice." The aspect of substantial justice at issue in this case is a postconviction petitioner's right to effective assistance of counsel. The postconviction court erred in dismissing Poole's amended petition for postconviction relief.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this appeal are those that concern the timeliness of Poole's original petition for postconviction relief and Poole's amended petition for postconviction relief. We will limit our background discussion to these facts.

Poole was sentenced on March 25, 1996. He was required to file his petition for postconviction relief within ten years of this date, i.e. by March 27, 2006 (March 25, 2006 was a Saturday). Poole complied with this deadline by filing a *pro se* petition for postconviction relief on March 14, 2006, alleging court error and ineffective assistance of counsel. Thereafter,

---

substantively an amendment to the *pro se* petition and should have been treated as such by the postconviction court.

**4**

Poole's case was referred to the Office of the Public Defender, Collateral Review Division. The Office received this referral on April 3, 2006. On April 25, 2006, an assistant public defender entered an appearance on behalf of Poole.

The hearing on Poole's petition was initially scheduled for October 12, 2006. Because of difficulty in obtaining transcripts and the reassigning of Poole's case to a different public defender, the postconviction court granted three postponement motions filed by Poole's counsel. On January 24, 2008, Poole's counsel filed a supplemental petition, which raised additional claims to the issues raised in the original *pro se* petition.[2] The State filed its answer to Poole's supplemental petition on September 19, 2008. The State argued, *inter alia*, that "Poole's supplemental petition was filed well outside the 10–year time limit . . . and should be dismissed."

Poole's hearing was held on October 1, 2008. At the hearing, the State orally moved to dismiss the supplemental petition because Poole failed to show "extraordinary cause" for filing the supplemental petition outside the ten year statute of limitations. Poole argued that the arguments in the supplemental petition should be considered because the original petition was filed *pro se*. The postconviction court agreed with the State that "extraordinary cause" had not been shown and granted the State's motion to dismiss.

---

**2.** The original *pro se* petition raised the following three claims: (1) that Poole's sentences exceeded the maximum authorized by law in violation of his due process rights; (2) that error on behalf of the court and Poole's trial counsel denied Poole a fair trial because he was tried under theories of first degree premeditated murder and felony murder, but was not actually charged with felony murder; and (3) that the unlawful inclusion of the felony murder charge caused an unknowing and involuntary waiver of Poole's right to remain silent as a witness at trial.

The supplemental petition raised three new grounds for relief, all relating to ineffective assistance of counsel. The petition alleged that trial counsel: (1) failed "to object to and move to strike impermissible testimony and cross-examination by the state referencing Petitioner's post-arrest, pre-*Miranda* silence"; (2) failed "to object to and move to strike improper and prejudicial statements made by State's counsel during closing arguments"; and (3) failed "to preserve the record for appeal."

The postconviction court issued a written opinion reiterating this position on December 4, 2008. In the opinion, the court "determined that the filing of a Supplemental Petition to a Post–Conviction Petition is to be governed by the purview of the 10–year rule." The court decided that supplemental petitions, even ones that amend *timely* filed original petitions, can only be accepted by the court if "extraordinary cause is shown." The court reasoned that "[i]f supplemental petitions were not also restrained by the 10–year filing rule ... the 10–year rule would be moot, allowing petitioners unfettered time to file and present a petition for post-conviction relief."

After dismissing the supplemental petition, the postconviction court found no merit in the *pro se* petition and denied all relief to Poole.

## DISCUSSION

▆▆ The primary issue before this Court is whether a postconviction court errs in dismissing an amended petition for postconviction relief when it is filed more than ten years after the date of sentencing and the petitioner fails to show "extraordinary cause" for filing at such time. Poole argues that "extraordinary cause" need not be established because his original petition was timely filed and amendments to timely filed petitions are freely allowed. The State counters that the "extraordinary cause" standard must apply because freely accepting new arguments after the limitations period would ignore the purpose of enacting the limitations period in the first place. We discuss these arguments and others in turn.

In Maryland, postconviction proceedings are governed by the Uniform Postconviction Procedure Act ("UPPA"), *see* MD. CODE ANN. CRIM. PROC. ("CP") § 7–101 *et seq.* (2001, 2008 Repl.Vol.), and the Maryland Rules implementing the UPPA, *see* Rule 4–401 *et seq.* The outcome of this case turns on our interpretation of the UPPA.[3]

---

3. The UPPA is based on the Uniform Post–Conviction Procedure Act ("UPCPA"), first promulgated by the National Conference of Commissioners on Uniform State Laws in 1955 (subsequently revised and

6

The interpretation of a statute is a question of law, which we review *de novo*. *Obomighie v. State*, 170 Md.App. 708, 710, 908 A.2d 132 (2006) (citing *Collins v. State*, 383 Md. 684, 688, 861 A.2d 727 (2004)). In *Lockshin v. Semsker*, 412 Md. 257, 274–76, 987 A.2d 18 (2010), Judge Harrell summarized the applicable principles of statutory interpretation:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.
>
> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application.

superseded in 1966 and again in 1980). Maryland became the second state to adopt the UPCPA in 1958. Michael A. Millemann, *Collateral Remedies in Criminal Cases in Maryland: An Assessment*, 64 Md. L.Rev. 968, 992 (2005). "Today, every state provides convicted defendants with at least one type of postconviction remedy; many provide multiple remedies." *Id.* at 992 n. 143. Moreover,

> [f]ifteen states have enacted some version of the UPCPA, and these acts remain in force in twelve of those fifteen states. As of July 2004, the ten states that currently have some statutory version of the UPCPA are Maryland, Montana, Oregon (primarily based on the original 1955 version of the UPCPA); Idaho, Iowa, Minnesota, Oklahoma, Rhode Island, and South Carolina (primarily based on the 1966 revision); and North Dakota (primarily based on the 1980 revision). Additionally, Arkansas, Nevada and South Dakota enacted versions of the UPCPA, but then repealed them. [T]wo additional states, Alaska and Indiana, have adopted some form of the UPCPA by court rule.

*Id.* (citations omitted).

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

(Citations and quotation marks omitted).

The relevant sections of the UPPA are unambiguous as applied to the facts of this case. CP § 7–102 lists the substantive requirements that a petitioner must satisfy to begin a postconviction proceeding; CP § 7–103 explains the number of petitions that may be filed and states the time period in which petitions must be filed; and CP § 7–108 sets out a petitioner's right to counsel and a hearing. Rule 4–401 provides the venue where a petition should be filed; Rule 4–402 sets out the minimum content that a petition should contain and sets out a provision governing amendments to the petition; and Rule 4–403 states that, if the petitioner is indigent, the clerk of the court shall notify the Public Defender's Office by forwarding it a copy of the petition.

Two of these provisions are particularly important to the present dispute. CP § 7–103(b)(1) explains the available time frame for commencing a postconviction action:

Unless extraordinary cause is shown, in a case in which a sentence of death has not been imposed, a petition under this subtitle may not be filed more than 10 years after the sentence was imposed.

Thus, a petition for postconviction relief may be filed as a matter of right within ten years of the date of sentencing, but after ten years, the court must find extraordinary cause to accept such a petition. The UPPA does not address amendments to postconviction petitions, but the Maryland Rules do.

Rule 4–402(c) states that "[a]mendment of the petition shall be freely allowed in order to do substantial justice." It is the interplay of these two provisions that fuels the dispute before us.

We conclude that the postconviction court erred in dismissing Poole's amended petition. The "extraordinary cause" standard set out in CP § 7–103(b)(1) does not apply to amendments made to timely filed petitions. A petitioner must show extraordinary cause only if the *original* petition for postconviction relief is filed more than ten years after the sentence was imposed. If the original petition is timely filed, as it was in this case, then under Rule 4–402(c), amendments to petitions "shall be freely allowed in order to do substantial justice." Our reasoning follows.

The scope, meaning and applicability of CP § 7–103(b)(1) becomes clear when read in context with other provisions in the UPPA. *See Chow v. State,* 393 Md. 431, 443, 903 A.2d 388 (2006) ("The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect.").

CP § 7–102 states the requirements that a convicted person must satisfy to "begin a proceeding" under the UPPA. CP § 7–103 explains the time period in which a person should begin such a proceeding and lists how many petitions a person may file. Specifically, CP § 7–103 says that "a person may file only one petition for relief" and that "a petition . . . may not be filed more than 10 years after the sentence was imposed." These requirements only apply to petitions that "begin a proceeding," i.e. petitions filed to institute a postconviction proceeding as contemplated in CP § 7–102. The requirements listed in the UPPA do not apply to amendments. In fact, the UPPA does not address amendments at all.

For insight on amendments to postconviction petitions, we must turn to Chapter 400 of Title 4 of the Maryland Rules, entitled "Post Conviction Procedure." There, Rule 4–402(c) clearly and unequivocally states: "Amendment of the petition

shall be freely allowed in order to do substantial justice."[4] As long as the petition that begins the proceeding is timely filed, amendment of that petition is freely allowed. The "extraordinary cause" standard only applies if the original petition—the petition that begins the proceeding—is "filed more than 10 years after the sentence was imposed." CP § 7–103(b)(1).

This conclusion is supported by CP § 7–108. That statute provides that "[e]xcept as provided in subsection (b) of this section, a person is entitled to assistance of counsel and a hearing on a petition filed under this title." It is fundamental that " 'the right to counsel means the right to the *effective* assistance of counsel.' " *Stovall v. State*, 144 Md.App. 711, 721, 800 A.2d 31 (2002), *cert. denied*, 371 Md. 71, 806 A.2d 681 (2002) (quoting *State v. Flansburg*, 345 Md. 694, 700, 694 A.2d 462 (1997)) (emphasis added). In the context of postconviction proceedings, the right to effective assistance of counsel necessarily includes the right to add non-frivolous issues developed by counsel, which were not included in the original petition. *See O'Connor v. Director*, 238 Md. 1, 2, 207 A.2d 615 (1965) ("It is a meaningless gesture to appoint counsel, if that counsel is afforded no opportunity, by suggesting amendments to the petition or otherwise, to assist the applicant."); *Hobbs v. Warden of Maryland Penitentiary*, 219 Md. 684, 686, 148 A.2d 380 (1959) ("Since under the [Maryland Post Conviction Procedure] Act it is contemplated that the proceeding ... may be invoked only once, it is important that the applicant shall have an opportunity through counsel to present any ground of alleged error not previously and finally litigated."). If amendments were not freely allowed to timely filed *pro se* petitions, a petitioner's right to assistance of counsel would be reduced to a mere right to have an attorney appear at a hearing to

---

4. Rule 4–402(c) is derived from former Rule BK41(d); the language in both versions of the Rule is the same. The BK subtitle of the Maryland Rules, adopted by the Court of Appeals effective January 1, 1962, was the first provision of the Rules to govern postconviction proceedings in Maryland. On July 1, 1984, the BK subtitle was rescinded and replaced by Title 4, Chapter 400 of the Maryland Rules and, at this time, Rule 4–402(c) replaced BK41(d) without change.

argue the issues as presented in the *pro se* petition, which are often frivolous. It is only appropriate that counsel have the opportunity to remove frivolous claims as well as to add non-frivolous claims by freely amending a postconviction petition. *See Niblett v. Warden of Md. House of Corr.*, 221 Md. 588, 591, 155 A.2d 659 (1959) ("[T]rial judges should require counsel who represent post conviction procedure applicants . . . to file amended petitions . . . if investigation of the case by the lawyer indicates that manifestly invalid or untenable grounds for relief are included, or that possible valid grounds have been omitted, since the former cannot help the prisoner and unnecessarily and uselessly take the time of the judges, and the latter should be included to protect the applicant from the waiver of any right to relief. . . .").

The State presents two arguments to refute this conclusion.

First, the State argues that *O'Connor, Hobbs* and *Niblett* are inapposite because the opinions were issued between 1959 and 1965, and thus do not "bear[ ] materially on the correct interpretation of a statute of limitations enacted almost 40 years later." We do not agree.

Maryland's postconviction relief statute was first enacted on June 1, 1958. *See* 1958 Md. Laws 178. While the statute has been amended periodically since then, the Act has never addressed amendments to petitions. *O'Connor, Hobbs* and *Niblett* merely stand for the proposition that counsel for a postconviction petitioner, once assigned to a case, should be allowed to add new arguments to a *pro se* petition. The adoption of present-day Rule 4–402(c) by the Court of Appeals confirms this principle. Indeed, it is within the province of the judiciary to determine the propriety and scope of amendments to court filings, be it through appellate decisions or judicial rule-making. That a statute of limitations was added to the postconviction relief act by the General Assembly in 1995 does not alter the validity of the proposition enunciated in *O'Connor, Hobbs* and *Niblett*, nor does it impact our reading of Rule 4–402(c).

Moreover, the ten year limitations period for postconviction petitions became effective on October 1, 1995, when subsection (a)(2)(II) was added to Art. 27, § 645A(a) of the Code (now CP § 7–103(b)(1)). *See* 1995 Md. Laws 2091, 2091–92. We presume that the General Assembly was aware of *O'Connor, Hobbs* and *Niblett* as well as the provisions of Rule 4–402(c) when it enacted the 1995 amendment to section 645A(a) of the Code. *See Stachowski v. State,* 416 Md. 276, 291 (2010) ("The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation."). Therefore, we are not persuaded by the State's argument that the 1995 amendment was an effort by the General Assembly to, *sub silentio,* change the law as articulated in *O'Connor, Hobbs* and *Niblett.*

Second, the State cites two federal cases, *Mayle v. Felix,* 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) and *United States v. Hernandez,* 436 F.3d 851 (8th Cir.2006), for the proposition that, under the relation back doctrine in federal habeas corpus proceedings, a court "may allow assigned counsel to file a supplemental petition beyond the limitations period [but only if that petition] is confined to developing the claims previously raised in the timely-filed pro se petition." The State contends that Maryland courts should follow this approach. We are not persuaded by this argument.

■ Federal habeas corpus proceedings are governed by 28 U.S.C.S. § 2241 *et seq.* and the Federal Rules of Civil Procedure " 'to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules.' " *Mayle,* 545 U.S. at 654, 125 S.Ct. 2562 (quoting Habeas Corpus Rule 12) (brackets inserted in *Mayle* ). This scheme is markedly different from Maryland's postconviction scheme. Most importantly, the federal habeas corpus scheme does not "require appointment of counsel for an indigent litigant." 545 U.S. at 664 n. 8, 125 S.Ct. 2562. In Maryland, however, under the Public Defender Act, *see* CP § 16–204(b)(1)(iii), and the

UPPA, *see* CP § 7–108, an indigent person is entitled to assistance of counsel in a postconviction proceeding. *See DeWolfe v. Richmond,* — Md. —, — – —, — A.3d ——, 2012 WL 10853, No. 34, Sept. Term, slip op. at 16–17 (filed January. 4, 2012). As we discussed *supra,* in Maryland, effective assistance of counsel necessarily includes the right of counsel to freely add non-frivolous amendments to an original *pro se* petition. *O'Connor,* 238 Md. at 2, 207 A.2d 615. If we were to adopt the State's position, we would read a postconviction petitioner's entitlement to "effective assistance of counsel" out of the Maryland Postconviction statute. We decline to do so.

The State's overarching position in this case is that amendments that are not filed within ten years of the date of sentencing—even amendments to *timely* filed petitions—should only be allowed if the petitioner can show "extraordinary cause" to amend. Under the State's view of the postconviction scheme, a court should freely allow an amended petition filed *before* the ten year limitations period, as contemplated by Rule 4–402(c), but, if the amended petition is filed *after* the ten year limit, then a court should dismiss the amended petition absent "extraordinary cause," as contemplated by CP § 7–103(b).

Not only is this interpretation contrary to a plain reading of the UPPA and the Maryland Rules, but it would lead to unnecessarily complex and unfair results. If we were to adopt the State's scheme, a *pro se* petitioner, to ensure full and effective assistance of counsel from the public defender's office, would have to file a petition for postconviction relief well before, perhaps years before, the ten year filing deadline. Depending on the complexity of the case and staffing and resource levels at the Public Defender's Office, it may take well over a year for a public defender to receive a case, request the necessary transcripts and court documents, research the issues, and develop and file an amended petition.[5]

---

5. In this case, the supplemental petition was filed approximately twenty months after the Public Defender's Office entered its appearance on

The petitioner would be forced to ignore the ten year filing deadline in the UPPA and instead make certain to file a petition one or two years *before* the ten year filing deadline. However, there is nothing in the UPPA or the Rules that places a potential petitioner on notice that, for all practical purposes, the actual deadline—if the person wants effective assistance of counsel and desires to avoid the high hurdle of showing "extraordinary cause"—is something other than ten years from the date of sentencing. We doubt this is what the General Assembly intended when it enacted the ten year limitations provision in CP § 7–103(b)(1). The case before us illustrates our point.

Poole filed his petition on March 14, 2006, approximately two weeks before the ten year filing deadline. Because of a change in counsel and difficulty obtaining transcripts, Poole's assigned public defender was not able to file an amended petition until January 24, 2008, almost two years later. The State's logic would have us hold that, even if Poole had filed his petition a year and a half before the ten year deadline, by the time Poole's counsel was prepared to file an amended petition, Poole's counsel would need to show "extraordinary cause" to amend the petition. A petitioner may lose meaningful assistance of counsel merely because of a problem obtaining a transcript. This would serve to prejudice a person who files a petition nine and half years after the date of sentencing as compared to a person who files a petition, say, five years after the date of sentencing. Again, we do not think the filing deadline in CP § 7–103(b)(1) was intended to produce such potentially unfair results.

The State further contends that applying the "extraordinary cause" standard "effects no unfairness" because Poole "has no excuse whatsoever for waiting almost the full ten years before initiating post conviction relief." In some cases, however, a delay of this magnitude may be justified. It may take years for a petitioner's direct appeal to become final. Moreover,

---

Poole's behalf. We gather from comments made by counsel at oral argument that such delays are not unusual.

counsel may advise a petitioner to delay the filing of a petition pending the resolution of a case, or series of cases, in a higher court.

We conclude that, in accordance with Rule 4–402(c), amendments (regardless of how titled) to timely filed petitions for postconviction relief—including amendments that add new non-frivolous issues to the original petition—"shall be freely allowed in order to do substantial justice." [6] The postconviction court erred in dismissing Poole's supplemental petition.

**THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS VACATED AND THIS CASE REMANDED TO IT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY MONTGOMERY COUNTY.**

---

**6.** Construing a similar postconviction scheme, the Supreme Court of Pennsylvania reached the same result:

[W]e agree ... that the [postconviction] court properly declined to treat Flanagan's amended petition as a serial, post-conviction petition which would be independently subject to the [Pennsylvania postconviction relief statute's] one-year time limitation. [Postconviction] courts are invested with discretion to permit the amendment of a pending, timely-filed post-conviction petition, and this Court has not endorsed the ... position that the content of amendments must substantively align with the initial filing. Rather, the prevailing rule remains simply that amendment is to be freely allowed to achieve substantial justice. See Pa.R.Crim.P. 905(A). The Court has recognized that adherence to such rules governing post-conviction procedure is particularly appropriate since, in view of the [Act's] time limitations, the pending [postconviction] proceeding will most likely comprise the petitioner's sole opportunity to pursue collateral relief in state court.

*Commonwealth v. Flanagan*, 578 Pa. 587, 604–05, 854 A.2d 489 (2004) (some citations omitted).